UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARK SKILLINGTON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Case No. 4:09CV673MLM |
| ACTIVANT SOLUTIONS, INC., | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION

Before the court is the Motion to Dismiss filed by Defendant Activant Solutions, Inc. ("Defendant"). Doc. 6. Plaintiff filed a Response. Doc. 9. Defendant filed a Reply. Doc. 11. Plaintiff filed a Surreply. Doc. 14. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 10.

## LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).[1] See also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

Upon considering a motion to dismiss a federal "court must accept as true all of the allegations in a complaint" that are applicable to legal conclusions. Ashcroft v. Iqbal, 129 S.Ct. 1937,

---

[1] Plaintiff incorrectly argues that Twombly, 550 U.S. 544, does not apply outside the antitrust context. See e.g., Gregory v. Dillard's, Inc., 2009 WL 1290742 (8th Cir. May 12, 2009)

1950 (2009). However, pleadings which present "no more than conclusions, are not entitled to the assumption of truth." Id.

Further, in regard to a Rule 12(b)(6) motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ... see, e.g., ... Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Twombly, 127 S. Ct. at 1964-65. See also Gregory v. Dillard's, Inc., 2009 WL 1290742 (8th Cir. May 12, 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right.'") (quoting Stalley v. Catholic Health Initiative, 509 F.3d 517, 521 (8th Cir. 2007)).

Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 127 S. Ct. at 1965 (citation omitted).

## BACKGROUND

In his Complaint, Plaintiff alleges that Defendant markets computer hardware, software, service and support. In Count I, Plaintiff alleges that Defendant violated Missouri's Sales Commission Statute, Mo. Rev. Stat. § 407.912, in that Plaintiff was employed as a sales representative by Defendant from about January 29, 2007, through October 10, 2008; that Defendant compensated Plaintiff, in part, through commissions as defined by Mo. Rev. Stat. § 407.911(1); that Plaintiff's efforts soliciting sales on behalf of Defendant resulted in sales by

2

Defendant to customers Rural King and Atwoods; that Defendant terminated Plaintiff's employment without providing him with commissions which he earned as a result of Defendant's sales to Rural King and Atwoods; and that Defendant's conduct of failing to pay Plaintiff commissions violated Mo. Rev. Stat. § 407.912.

In Count II, Breach of Contract, Plaintiff incorporates the allegations of Count I and further alleges as follows: that Plaintiff and Defendant had a contract under which Defendant had an obligation to pay Plaintiff for work performed and pursuant to which Defendant had an obligation to pay Plaintiff for sales he "induced" through his work efforts; that Defendant breached this contractual obligation; and that, as a result, Plaintiff has suffered lost income.

In Count III, Quantum Meruit, Plaintiff incorporates the allegations of Counts I and II and further alleges that the services Plaintiff provided to Defendant had a reasonable value; that Defendant accepted and retained the benefit of Plaintiff's services under circumstances which would render such retention inequitable; that, despite Plaintiff's demands, Defendant has failed and refused to pay Plaintiff for the reasonable value of his services; and that as a result, Defendant has been unjustly enriched and Plaintiff has been damaged in the form of lost income.

Additionally, on November 29, 2007, Plaintiff agreed to Defendant's FY2008 Sales Incentive Plan ( the "Plan"), which governed compensation for sales made during the Plan. Def. Ex. 1 at 9. The Plan was effective from October 1, 2007, through September 30, 2008. Def. Ex. 1. The Plan provided that:

> **Separation**: Participants do not earn or accrue the right to any incentive compensation until the computer company receives payment for the relevant transaction. Participants who terminate with uncompleted transactions pending will continue to be paid for the portions of those transaction which are resolved (by receipt of payment by Activant from the customer) within 100 days of the participant's termination date, however, if the account(s) in question require ongoing account support activities beyond the participant's termination date a split credit may be assigned ... . Commission payments to participants who have terminated their

3

employment will be withheld until the total of such payments is equal to or greater than the total of any and all recoverable draws the participant has outstanding with the Company.

Def. Ex. 1 at 7.

The Plan also states that "Activant sales incentive plans are not employment contracts and do not alter the 'at-will' status of employment." Def. Ex. 1 at 7.

In the pending Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Defendant alleges that each Count of Plaintiff's Complaint has failed to state a claim; that Plaintiff has failed to meet the pleading requirements set forth in Twombly, 127 S.Ct. 1955; and that, therefore, the Complaint should be dismissed in its entirety.

**DISCUSSION**

**A.     Count I - Missouri Sales Commission Statute:**

In Count I, pursuant to the Missouri Sales Commission Statute, Mo. Rev. Stat. § 404.911 et seq., Plaintiff seeks payment for commissions which he allegedly earned while he was employed by Defendant. Defendant argues that Plaintiff has not stated a cause of action in Count I and is not entitled to commissions because he has not alleged and cannot allege that he earned the commissions which he is seeking while he was employed by Defendant. In support of this position Defendant argues that the Sales Commission Statute, Mo. Rev. Stat. § 407.912, provides that when there is a written contract, the contract establishes when commissions become due and when they are earned and that when there is no contract, or if the contract is ambiguous, commissions are due when the product is delivered and accepted by the purchaser or when the principal receives payment in full.

The Missouri Sales Commission Statute, Mo. Rev. Stat. § 407.912 provides:

1. When a commission becomes due shall be determined in the following manner:

(1) The written *terms of the contract* between the principal and sales representative shall *control*;

4

(2) If there is no written contract, or if the terms of the written contract do not provide when the commission becomes due, or the terms are ambiguous or unclear, the commission shall be paid when the product or service is delivered and accepted by the purchaser or the principal receives satisfaction in full;

(3) If neither subdivision (1) nor (2) of this subsection can be used to clearly ascertain when the commission becomes due, then the commission shall be due on the date the principal accepts the order and receives satisfaction in full, unless the custom and usage prevalent in this state for the parties' particular industry is different, in which event such custom and usage shall prevail.

2. Nothing in sections 407.911 to 407.915 shall be construed to impair a sales representative from collecting commissions on products or services *ordered prior to the termination* of the contract between the principal and the sales representative but delivered and accepted by the purchaser after such termination.

3. When the contract between a sales representative and a principal is terminated, all commissions then due shall be paid within thirty days of such termination. Any and all commissions which become due after the date of such termination shall be paid within thirty days of becoming due.

Mo. Rev. Stat. § 407.911(1) defines "commission" as "compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales, or as a specified amount per order or per sale." Mo. Rev. Stat. § 407.911(2) defines "principal" as a business entity which:

(a) Manufactures, produces, imports, provides, or distributes a product or service for sale;

(b) Contracts with a sales representative to solicit orders for the product or service; and

(c) Compensates the sales representative, in whole or in part, by commission;

Mo. Rev. Stat. § 407.911(3) defines "sales representative" as a "person ... who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include a person, firm, corporation, partnership, or other business entity who places orders or purchases for its own account for resale."

Mo. Rev. Stat. § 407.913 provides for civil actions where a principal fails to pay a sales representative commissions. In particular this statutory provision states:

> Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a civil action for the actual damages sustained by the sales representative and an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata basis from the date of termination to the date of payment. In addition the court may award reasonable attorney's fees and costs to the prevailing party.

In his Complaint, Plaintiff alleges that while employed by Defendant, among other things, he formulated sales proposals for Defendant's customers, Rural King and Atwoods; that his efforts resulted in sales by Defendant to these customers; that he *earned* commissions as anticipated by the Missouri Sales Commission Statute; and that upon his being terminated by Defendant Plaintiff was not paid the commissions he earned from sales to Rural King and Atwood. Additionally, Plaintiff has alleged that he was a sales representative and that Defendant was a principal as defined by the Sales Commission Statute during the relevant period.

The Sales Commission Statute, Mo. Rev. Stat. § 407.912.1, does provide that where there is a contract, the contract controls in regard to whether a terminated employee is entitled to commissions. Plaintiff argues that the Plan is not a contract. Significantly, in Mathews v. Knoll Associates, Inc., 388 S.W.2d 529 (Mo. Ct. App. 1965), relied upon by Plaintiff for other points, the Missouri appellate court addressed a similar sales commission plan as a contract. Moreover, Plaintiff signed the Plan, which specifies the conditions pursuant to which Defendant was obligated to pay Plaintiff commissions. Def. Ex. 1 at 8. Plaintiff argues in his Reply that the Plan is not a contract merely because Defendant could unilaterally change the terms of the Plan. Doc. 13 at 6. While Defendant retained the right to change the terms of the Plan,[2] nonetheless Defendant provided

---

[2] See "Plan Stipulations," Def. Ex. 1 at 7.

consideration and Plaintiff was entitled to derive benefit while the Plan was in effect.[3] The court finds, therefore, that the Plan is a contract under Missouri law as it was offered by Defendant, accepted by Plaintiff, and represented a bargain for which there was mutual assent. See Bergstrom v. Sambo's Restaurants, Inc., 687 F.2d 1250, 1256 (8th Cir. 1982) ("[F]or a contract to be created, there must be a meeting of the minds of the parties upon the essential terms and conditions of the subject about which they are agreeing."); Fernan v. Prudential Ins. Co. of Am., 162 S.W.2d 281, 283-84 (Mo. Ct. App. 1942). Thus, pursuant to the Missouri Sales Commission Statute, Mo. Rev. Stat. § 407.912.1(1), the terms of the contract control.

The Plan unambiguously provided that commissions were not earned until payment was received by Defendant. The Plan also unambiguously required that for a sales representative to be paid a commission, payment must have been received by Defendant no later than 100 days after the sales representative stopped working for Defendant. Plaintiff does not allege that the commissions which he is seeking are based on sales for which Defendant received payment within 100 days of Plaintiff's termination.[4] As held by the court in Mathews, 388 S.W.2d at 532, "when the language

---

[3] Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15 (Mo. Ct. App. 2008), which Plaintiff argues is controlling on the issue of whether the Plan was a contract, is distinguishable. The issue before the court in Morrow was whether an arbitration agreement was a legally enforceable contract to arbitrate an employment dispute between an employer and an at-will employee. The court held that the agreement in Morrow was not a legally enforceable contract because the employer "reserve[d] the right, in its sole discretion, to modify or revoke the provisions" of the arbitration agreement and because the employer provided "no other legal consideration to [its] employees for unilaterally giving up their right of access to the courts." 273 S.W.3d at 18. In the matter under consideration Defendant did provide Plaintiff with consideration, in the form of commissions, in return for his becoming a signatory to the Plan.

[4] Burrus v. HBE Corp., 211 S.W.3d 613, 617 (Mo. Ct. App. 2006), upon which Plaintiff relies, is distinguishable from the matter under consideration in that the Plan in Burrus was ambiguous as to when commissions were payable to a terminated sales representative. In Burrus, 211 S.W.3d at 618, the court found that the Plan did not clearly define when a commission was earned. Plaintiff also relies on Mathews v. Knoll Associates, Inc., 388 S.W.2d 529 (Mo. Ct. App. 1965), upon which case the court relied in Burrus, 211 S.W.3d 613. As noted by the court in Burrus, 211 S.W.3d

7

of a contract is plain there can be no construction because there is nothing to construe, ... ; ... a court should not and cannot, [ ] reformulate [a] contractual agreement voluntarily arrived at between [ ] parties." (citing Hahn v. Forest Hills Construction Co., 334 S.W.2d 383, 385 (Mo. Ct. App. 1960); Chicago R. I. & P. Ry. Co. v. Maryland Casualty Co., 75 F.2d 596 (8th Cir. 1935)). Plaintiff does not allege that the condition precedent for him to be paid commissions, as specified by the Plan, was met. See Pratt v. Seventy-One Hawthorne Place Assocs., L.P., 106 S.W.3d 608 (Mo. Ct. App. 2003) (holding that there was a genuine issue of material fact as to whether conditions precedent were met for an employee to be paid sales commissions). As such, Plaintiff has not alleged facts which affirmatively and/or plausibly suggest that the he has a right to recover commissions under the Missouri Sales Commission Statute, § 407.912.1(1). See Twombly, 127 S. Ct. at 1964-65; Gregory, 2009 WL 1290742.

Indeed, the Plan was not effective from September 30, 2008, until the date Plaintiff last worked for Defendant, October 10, 2008. Thus, Mo. Rev. Stat. § 407.912.1(2) is applicable during that period. The court will also consider, arguendo, that the Plan is not determinative of whether Plaintiff is entitled to commissions earned prior to September 30, 2008, and will consider whether Plaintiff is entitled to commissions pursuant to § 407.912.1(2) or (3). Section 407.912.1(2), provides that commissions are not earned until the *product or service is delivered* or until *payment is received* by the principal. Under § 407.912.1(3) commissions are due on the date the principal accepts the order and receives satisfaction in full. Indeed, § 407.912.2, provides that nothing in the

---

at 617, the Plan in Mathews, 388 S.W.2d at 532, was likewise ambiguous as to when a commission was earned. As discussed above, the Plan in the matter under consideration unambiguously defines when a commission is earned.

8

statute's language should be construed to deprive a sales representative of commissions for sales which were completed, or at least partially completed, while the sales person was employed by the principal.

Plaintiff merely alleges that he solicited sales. As the basis for his claim for commissions, Plaintiff does not allege that while he was employed by Defendant Rural King or Atwoods placed any orders with Defendant; that any agreement was reached whereby Rural King or Atwoods was to order products or services from Defendant; that transactions whereby Rural King or Atwoods were to purchase products or services were, at least, partially completed; or that Defendant accepted orders from Rural King or Atwoods. Plaintiff does not allege that, as a result of his sales efforts, products or services were delivered to Rural King or Atwoods or that payment, or even partial payment, was received by Defendant for such products or services while Plaintiff was employed by Defendant. As such, Plaintiff has not alleged facts which affirmatively and/or plausibly suggest that he has a right to recover commissions under the Missouri Sales Commission Statute, § 407.912.1(2)-(3). See Twombly, 127 S. Ct. at 1964-65; Gregory, 2009 WL 1290742. The court finds, therefore, that Defendant's Motion to Dismiss should be granted to the extent it addresses Count I.

**B.     Count II - Breach of Contract:**

In Count II Plaintiff alleges that he is entitled to recover pursuant to Defendant's breach of contract. Defendant contends that Plaintiff has failed to state a cause of action in Count II and, alternatively, that he cannot do so. Plaintiff's Complaint does not specify whether the contract he seeks to enforce in Count II is express or implied. In his Response to the Motion to Dismiss Plaintiff states that the Plan is not a contract but that "a different legally enforceable promise (contract) between the parties exists." Plaintiff continues to state that there was a "promise" made by Defendant and that whether it is "express or implied," the promise is legally enforceable. Doc. 9 at

9

11.[5] Plaintiff suggests that the promise was to pay Plaintiff commissions and that this promise is a contract claim. The court will consider Plaintiff's ambiguous theory of recovery as alleged in Count II.

The court has found above, in regard to Count I, that the Plan is a contract and that Plaintiff has not sufficiently alleged facts to suggest he is entitled to recover commissions under the Plan. The court further notes, in regard to Count II, that as an at-will employee, Plaintiff may bring a cause of action against Defendant for failure to pay as provided by a commission agreement for services performed during his employment. See Pratt, 106 S.W.3d at 611 ("[A]n employer has an obligation to pay terminated employees for all wages, bonuses and/or commissions earned by the employee prior to the termination of the employment."). See also Burrus v. HBE Corp., 211 S.W.3d 613 (Mo. Ct. App. 2006); Null v. K&P Precast, Inc., 882 S.W.2d 705, 708 (Mo. Ct. App. 1994) (citing ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 377 (Mo. 1993) (en banc)).

The elements of a breach of contract claim under Missouri law are: "'(1) a contract between the plaintiff and the defendant; (2) rights of the plaintiff and obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" Teets v. Am. Family Mut. Ins. Co., 272 S.W.3d 455, (Mo. Ct. App. 2008) (quoting Howe v. ALD Servs., Inc., 941 S.W.2d 645, 650 (Mo. Ct. App. 1997)).

The Plan requires that sales be completed, or at least partially completed, prior to termination for a sales representative to receive commissions upon termination. Plaintiff does not allege in Count II that any orders placed by Rural King or Atwoods were completed or partially completed

---

[5] Defendant suggests that Plaintiff seeks to recover in Count II pursuant to an implied, rather than express contract. The court interprets Plaintiff's Response as asserting that he can recover under either theory.

while Plaintiff was employed by Defendant. As such, the court finds that, in Count II, Plaintiff has not alleged facts which affirmatively and/or plausibly suggest that the he has a right to recover commissions pursuant to an express contract. See Twombly, 127 S. Ct. at 1964-65; Gregory, 2009 WL 1290742. See e.g., Holland v. Tandem Computers Inc., 49 F.3d 1287 (8th Cir. 1995) (holding that although a person employed to solicit sales on a commission basis is entitled to receive commissions when an order is accepted by the person's employer, this rule can be altered by a written agreement; such an agreement can provide that a sales representative will be paid no commissions after his termination).

The court will also consider whether Plaintiff has sufficiently pled a cause of action under a theory of implied contract in Count II. Missouri common law provides that an employer has no right to refuse to pay an employee "for services rendered up to the time of discharge." Slusher v. Mid-America Broadcasting, Inc., 811 S.W.2d 443, 445 (Mo. Ct. App. 1991). As further stated by the Missouri appellate court in Slusher:

> [T]he rule is that a person employed to solicit sales orders on a commission basis is entitled to his commission when the order is accepted by his employer. The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped. This general rule may be altered by a written agreement by the parties or by conduct of the parties which clearly demonstrates a different compensation scheme. [citations omitted]

Id. at 446.

Under an implied contract, applying common law, it is not necessary that Defendant received payment for orders or that orders were shipped prior to Plaintiff's discharge. See Clemons v. Zimmer Broad. Co., Inc., 159 S.W.3d 508, 514 (Mo. Ct. App. 2005) (quoting Slusher, 811 S.W.2d at 444-45). Rather, Plaintiff is entitled to unpaid commissions if, prior to his termination, Defendant accepted orders solicited by Plaintiff. See Slusher, 811 S.W.2d at 445-46.

Plaintiff does not allege that prior to his termination Defendant accepted orders from Rural King and Atwoods which orders were solicited by Plaintiff. As such, the court finds that, in Count II, Plaintiff has not alleged facts which affirmatively and/or plausibly suggest that the he has a right to recover commissions pursuant to an implied contract. See Twombly, 127 S. Ct. at 1964-65; Gregory, 2009 WL 1290742. The court finds, therefore, Defendant's Motion to Dismiss should be granted in regard to Count II.

**C.     Count III - Quantum Meruit:**

Defendant contends that Plaintiff has not and cannot state a claim in Count III for quantum meruit because such a cause of action cannot exist where there is a contract between the parties. Defendant also argues that because it is a necessary element that a commission be earned for a sales employee to recover under a theory of quantum meruit and that, because Plaintiff did not earn commissions while employed by Defendant, he cannot recover under such a theory.

"Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is based on a promise implied by the law that a person will pay the reasonable value for services or materials provided at that person's request or with his approval."[6] KC Excavating and Grading, Inc. v. Crane Construction Co., 141 S.W.3d 401, 408-409 (Mo. Ct. App. 2004) (citing Little Joe's Asphalt, Inc. v. C.W. Luebbert Construction Company, Inc., 74 S.W.3d 830, 833 (Mo. Ct. App. 2002)). Where there is an express contract, the law will not imply a contract. A & L Underground,

---

[6]     The elements of a claim for quantum meruit under Missouri law are as follows: [T]he plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, that the materials or services had reasonable value, and that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such materials or services.

Midwest Crane & Rigging, Inc. v. Custom Relocations, Inc., 250 S.W.3d 757, 760 (Mo. Ct. App. 2008) (quoting Olathe Millwork Co. v. Dulin, 189 S.W.3d 199, 206 (Mo. Ct. App. 2006)).

Inc. v. Leigh Constr., Inc., 162 S.W.3d 509, 511 (Mo. Ct. App. 2005). Thus, a plaintiff cannot recover on a theory of quantum meruit where there is an applicable contract. Banner Iron Works, Inc. v. Amax Zinc Co., Inc., 621 F.2d 883, 889 (8th Cir. 1980) ("Since the finding of a valid contract precludes recovery on a quantum meruit theory, [the plaintiff's] quantum meruit claim cannot be sustained."); KC Excavating, 141 S.W.3d at 409 ("Because the parties had a contract covering the additional work, quantum meruit does not lie.").[7] The court has found above that the Plan is a contract and that it is applicable to Plaintiff's claim for unpaid commissions.

Quantum meruit may be the basis for recovery where an at-will employee with a compensation agreement, such as Plaintiff, is prevented from earning commissions by his employer's conduct. Holland, 49 F.3d at 1289. Under such conditions, the employee's recovery cannot exceed the amount provided by an unambiguous compensation agreement. See id. The Plan applicable to Plaintiff's receiving commissions unambiguously provides that commissions are payable to a terminated employee only when Defendant receives payment from the customer within 100 days of the employee's termination. Plaintiff has failed to make such an allegation in Count III. Plaintiff, therefore, cannot recover under a theory of quantum meruit for the period prior to the Plan's expiration. The court finds, therefore, that Plaintiff has failed to allege facts which affirmatively and/or plausibly suggest that he has a right to recover commissions through September 30, 2008, pursuant to a theory of quantum meruit. See Twombly, 127 S. Ct. at 1964-65; Gregory, 2009 WL

---

[7] Bash v. B.C. Construction Co., Inc., 780 S.W.2d 697, 698 (Mo. Ct. App. 1989), does suggest that quantum meruit may be applicable despite the existence of a contract or commission sales agreement, as it holds that "[w]here there is a contract setting the amount payable for the services, a recovery may be had in quantum meruit, but not to exceed the contract price." See also Holland, 49 F.3d at 1289 (denying recovery under a quantum meruit theory because the compensation agreement provided that plaintiff would not be paid commissions after termination). As found above, in regard to Count II, under the Plan Plaintiff in the matter under consideration was not entitled to the commissions he claims he is entitled to receive. Thus, Plaintiff cannot recover under quantum meruit even if such recovery is not precluded merely because the Plan was a contract.

1290742; Holland, 49 F.3d at 1289; Banner, 621 F.2d at 889; A&L Underground, 162 S.W.3d at 511; KC Excavating, 141 S.W.3d at 409. As such, the court finds that Defendant's Motion to Dismiss should be granted as to that aspect of Count III in which Plaintiff seeks recovery based on quantum meruit for the period prior to September 30, 2008.

The Plan was not effective for the ten-day period following its expiration, October 1 through October 10, 2008. Plaintiff alleges, in Count III, that he provided a service to Defendant during this period; that he did so with Defendant's acquiescence; that Plaintiff's services had reasonable value; and that Defendant has failed and refused to pay the reasonable value of Plaintiff's services. See Midwest Crane & Rigging, Inc. v. Custom Relocations, Inc., 250 S.W.3d 757, 760 (Mo. Ct. App. 2008). As such, the court finds that Plaintiff has alleged facts which affirmatively and/or plausibly suggest that he has a right to recover from Defendant for services provided during the period of October 1 through 10, 2008, pursuant to a theory of quantum meruit. See Twombly, 127 S. Ct. at 1964-65; Gregory, 2009 WL 1290742; Midwest Crane, 250 S.W.3d at 760. The court finds, therefore, that Defendant's Motion to Dismiss should be denied as to that aspect of Count III in which Plaintiff seeks recovery based on quantum meruit for the period from October 1 through 10, 2008.

## CONCLUSION

For the reasons fully set forth above, the court finds that Defendant's Motion to Dismiss should be granted, in part, and denied, in part. The court further finds that Plaintiff has failed to allege facts which affirmatively and/or plausibly suggest that the he has a right to recover commissions under the theories of Counts I and II and that aspect of Count III in which he seeks compensation for services provided through September 30, 2007. See Twombly, 127 S. Ct. at 1964-

14

65; Gregory, 2009 WL 1290742. The court also finds that in that aspect of Count III which addresses the period from October 1, 2007, through October 10, 2007, Plaintiff has alleged facts which affirmatively and plausibly suggest that the he has a right to recover.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED**, in part, **and DENIED**, in part; Doc. 6

**IT IS FURTHER ORDERED** that to the extent Defendant's Motion to Dismiss addresses that aspect of Count III in which Plaintiff seeks compensation for services provided from October 1 through October 10, 2007, the Motion to Dismiss is **DENIED**;

**IT IS FURTHER ORDERED** that Counts I and II of Plaintiff's Complaint and that aspect of Count III which seeks compensation for services provided through September 30, 2007, are **DISMISSED**; Doc. 4.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of June, 2009.