**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARK SKILLINGTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ACTIVANT SOLUTIONS, INC., )<br>)<br>Defendant. ) | Case No. 4:09CV673MLM |

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant Activant Solutions, Inc. ("Defendant"). Doc. 22. Plaintiff filed a Response. Doc. 26. Defendant filed a Reply. Doc. 28. Plaintiff filed a Sur Reply. Doc. 38. Defendant filed a Response to Plaintiff's Sur Reply. Doc. 41. Also before the court are the Motion to Strike and the Motion for Protective Order filed by Defendant. Doc. 30, Doc. 31. Additionally, before the court is the Motion to Compel filed by Plaintiff.[1] Doc. 45. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 10.

## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts

---

[1] The parties have filed Responses and Replies to each other's additional pending motions.

that might affect the outcome will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id.</u> <u>See</u> also <u>Fenny v. Dakota, Minn.& E.R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. <u>Celotex</u>, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. <u>Anderson</u>, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. <u>Id.</u> at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. <u>Id.</u> at 255; <u>Raschick v. Prudent Supply, Inc.</u>, 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. <u>Anderson,</u> 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." <u>Id.</u> at 252. With these principles in mind, the court turns to an analysis of Defendant's Motion for Summary Judgment.

## UNDISPUTED FACTS[2]

Defendant is a provider of business management solutions to distribution and specialty retail

---

[2] The facts are undisputed unless otherwise stated.

2

businesses. Plaintiff was employed by Defendant as a sales representative from about January 29, 2007, through October 10, 2008. On November 29, 2007, Plaintiff agreed to Defendant's FY2008 Sales Incentive Plan ( the "Plan"), which stated that it was "effective for the range of dates specified in the applicable Appendix" and that it "appl[ied] to all sales for the period indicated." [3] Def. Ex. 1 at 7. The Plan was effective from October 1, 2007, through September 30, 2008. Def. Ex. 1. The Plan provided that:

> **Separation**: Participants do not earn or accrue the right to any incentive compensation until the computer company receives payment for the relevant transaction. *Participants who terminate with uncompleted transactions pending will continue to be paid for the portions of those transaction which are resolved (by receipt of payment by Activant from the customer) within 100 days of the participant's termination date*, however, if the account(s) in question require ongoing account support activities beyond the participant's termination date a split credit may be assigned ... . Commission payments to participants who have terminated their employment will be withheld until the total of such payments is equal to or greater than the total of any and all recoverable draws the participant has outstanding with the Company.

Def. Ex. 1 at 7 (emphasis added).

The Plan also provides, in relevant part, as follows in regard to "Split Credits":

Split credits are typically used where one or more salespeople share[] responsibility for a transaction. This includes situations where a participant leaves a sales position (for example, ... termination from the company) and another salesperson must do follow-up work to finalize the sale. Split credit allocations will be assigned for each participant responsible for a transaction and will be determined by the appropriate Sales Manager or Sales Director. ... The participant will receive sales and quota credit as dictated by his or her assigned allocation percentage.

Def. Ex. 1 at 7.

The Plan also states that "Activant sales incentive plans are not employment contracts and

---

[3] Neither party has suggested what terms governed compensation for sales made subsequent to the Plan's effective dates.

3

do not alter the 'at-will' status of employment." Def. Ex. 1 at 7.

On December 27, 2008, Defendant received an order from Matoon Rural King Supply, Inc. ("Rural King"). The December 27, 2008 Rural King order was accepted on January 5, 2009. On December 30, 2008, Defendant received an order from Atwood Distributing L.P. ("Atwoods"), which order was accepted by Defendant on January 6, 2009. Defendant received payment from Rural King on January 14, 2009, in the amount of $218,129. Pl. Ex. 3 at 7. Defendant received payment from Atwoods on January 14, 2009, in the amount of $189,846. Pl. Ex. 3 at 7. No orders were placed by, or sales made to, Rural King or Atwoods between October 1, 2007, and September 30, 2008. No orders were received by Defendant from Rural King or from Atwoods and no orders from Rural King or Atwoods were accepted by Defendant during Plaintiff's employment with Defendant. No agreements were reached between Defendant and Rural King or between Defendant and Atwoods during Plaintiff's employment whereby Rural King or Atwoods agreed to place any orders. There were no transactions pending between Defendant and Rural King or between Defendant and Atwoods at the time Plaintiff's employment ended. No payments were made to Defendant by Rural King or by Atwoods during Plaintiff's employment. Doc. 23-2, Affidavit of Bill McDonough, Defendant's Director of Sales, ¶ ¶ 7-18.

The Plan does not define "uncompleted transactions" as used in the separation clause. While the parties dispute whether Plaintiff had uncompleted transactions at the time the Plan expired and at the time Plaintiff was terminated, it is undisputed that while he was employed by Defendant Plaintiff "expended substantial time and effort soliciting sales" to Rural King and Atwoods and that during this time he formulated sales proposals for these customers. The record does not reflect whether the orders which Rural King and Atwoods placed in December 2008 were based on

proposals made, presented, and/or formulated by Plaintiff. Thus, it remains disputed whether the orders placed by these customers were based on proposals made, presented, and/or formulated by Plaintiff.

The history of the case reflects that in Count I of Plaintiff's original Complaint Plaintiff alleged, pursuant to the Missouri Sales Commission Statute, Mo. Rev. Stat. § 404.911 et seq., that Defendant owed him commissions which he allegedly earned while he was employed by Defendant. In Count II of his original Complaint, Plaintiff alleged Breach of Contract. In Count III, Plaintiff alleged Quantum Meruit.[4] The court dismissed Counts I and II of Plaintiff's original Complaint in their entirety, based on Plaintiff's failure to state a cause of action. The court dismissed Count III, in part, and, subsequently, granted Plaintiff leave to file the Amended Complaint.

In the Amended Complaint, Plaintiff alleges as follows: Count I, Breach of Contract based on Defendant's alleged breach of the Plan by failing to pay Plaintiff commissions for sales to Rural King and Atwoods; Count II, breach of an implied duty of good faith and fair dealing based on Defendant's contractual duty to pay commissions; and, Count III, violation of the Missouri Sales Commission Statute based on Defendant's failure to pay commissions. In the Amended Complaint Plaintiff alleges, in regard to all Counts, that while employed by Defendant he procured sales for Defendant to Rural King and Atwoods by, among other things, prospecting, identifying sales opportunities, presenting Defendant's products and services, building trust and rapport, entertaining customers, and formulating sales proposals. Plaintiff further alleges that Defendant received at least partial payment for sales to Rural King and/or Atwoods within 100 days of the date of Plaintiff's

---

[4] The court found only that, pursuant to a theory of quantum meruit, Plaintiff alleged facts which affirmatively and/or plausibly suggest that he had a right to recover from Defendant for services provided during the period of October 1 through 10, 2008.

5

termination, October 10, 2008.

## MOTION TO STRIKE

Plaintiff filed affidavits in support of his Response to Defendant's Motion for Summary Judgment, including an affidavit from himself and an affidavit from Andy McGlasson, a sales representative for a company other than Defendant. Defendant contends that certain paragraphs of Mr. McGlasson's affidavit should be stricken because they include hearsay and, therefore, fail to satisfy the requirements of Fed. R. Civ. P. 56(e). Further, Defendant contends that paragraph 7 of Plaintiff's affidavit should be stricken because Plaintiff fails to state specific facts in support of the legal conclusion stated in that paragraph regarding uncompleted transactions.

Plaintiff opposes Defendant's Motion to Strike. To the extent that Mr. McGlasson's affidavit includes hearsay, Plaintiff contends that Defendant has "prevented discovery of first-hand testimony needed by Plaintiff" and that, therefore, Mr. McGlasson's affidavit is the only evidence currently available to Plaintiff regarding certain relevant facts. To the extent that Defendant has moved to strike portions of Plaintiff's statement regarding the existence of uncompleted transactions, Plaintiff contends that the phrase "uncompleted transactions pending," as used in the Plan, is ambiguous and undefined in the Plan and that, therefore, the meaning of "uncompleted transactions pending" is at issue.

Whether a contract is ambiguous is also a question of law. Dorsch v. Family Med., Inc., 159 S.W.3d 424, 435 (Mo. Ct. App. 2005) (citing Yerington v. La-Z-Boy, Inc., 124 S.W.3d 517, 520 (Mo. App. S.D. 2004)). Moreover, a contract should be read as a whole to determine the intention of the parties. Dunn Indus. Group v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. 2003) (en banc). If possible, all terms of a contract must be given effect. Mews v. Charlie Chan Publ'g Co.,

884 S.W.2d 109, 111 (Mo. Ct. App. 1994). "A contract is ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain." Sonoma Mgmt. Co. v. Boessen, 70 S.W.3d 475, 479 (Mo. App. W.D. 2002) (quoting Atlas Reserve Temps. v. Vanliner Ins. Co., 51 S.W.3d 83, 87 (Mo. App. W.D.2001)). In regard to the use of extrinsic evidence for purposes of interpretation of an ambiguous contract, Missouri law provides:

> When, [ ], a contract is ambiguous and other means of construction fail, "use of extrinsic evidence for interpretation is proper." Thomas v. B.K.S. Development Corp., 77 S.W.3d 53, 59[13] (Mo. App.2002). In such an instance, extrinsic or parol evidence is admissible to "explain the positions of the parties at the time the agreement was made so the court may better understand the force and application of the language employed." Coale v. Hilles, 976 S.W.2d 61, 66[7] (Mo. App.1998). Stated differently, when a contract is ambiguous, parol evidence can be used "to show the surrounding circumstances and the relationship of the parties as indicating their real intent and the meaning of the contract, and also to show the practical construction placed upon the contract by the parties." Robson v. United Pac. Ins. Co., 391 S.W.2d 855, 861 (Mo.1965) (citations omitted). "The real intention of the parties is the universal rule of construction." Id. at 861.

Yerington v. La-Z-Boy, Inc., 124 S.W.3d 517, 522(Mo. Ct. App. 2004).

The court agrees with Plaintiff that the reference to "uncompleted transactions" as used in the Plan is ambiguous. First, as stated above, the Plan failed to define "uncompleted transactions pending." Second, the Plan's reference to its applying "to all sales for the period indicated" conflicts with the Plan's reference to "uncompleted transactions pending." The court finds, therefore, that what is meant by "uncompleted transactions pending," as referenced in the Plan, is ambiguous.

Upon considering Defendant's Motion for Summary Judgment the court will consider only those allegations of supporting affidavits which comply with Rule 56. As such, it need not strike portions of either Mr. McGlasson's or Plaintiff's affidavits. The court will, therefore, deny Defendant's Motion to Strike. The parties are reminded, however, that, at trial, the testimony of

witnesses must comply with the Federal Rules of Evidence.

## DISCUSSION

**A.      Count I - Breach of Contract:**

As stated above, in Count I of the Amended Complaint Plaintiff alleges Breach of Contract. The elements of a breach of contract claim under Missouri law are: "'(1) a contract between the plaintiff and the defendant; (2) rights of the plaintiff and obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" Teets v. Am. Family Mut. Ins. Co., 272 S.W.3d 455, (Mo. Ct. App. 2008) (quoting Howe v. ALD Servs., Inc., 941 S.W.2d 645, 650 (Mo. Ct. App. 1997)). Upon dismissing Plaintiff's Breach of Contract claim in the original Complaint this court held that the Plan was a contract under Missouri law. See Doc. 15 at 6-7 (citing Bergstrom v. Sambo's Restaurants, Inc., 687 F.2d 1250, 1256 (8th Cir. 1982); Fernan v. Prudential Ins. Co. of Am., 162 S.W.2d 281, 283-84 (Mo. Ct. App. 1942)). Indeed, the Plan provided that payment was due for sales made by a terminated employee where Defendant received payment within 100 days of the employees termination. Significantly, Plaintiff's original Complaint did not allege that Defendant received payment within 100 days of his termination. As such, the court found that Plaintiff had failed to state a cause of action based on contract in regard to the original Complaint.

Plaintiff alleges, however, in the Amended Complaint, and the undisputed facts establish, that Defendant received payment from Rural King and Atwoods within 100 days of Plaintiff's termination. Additionally, the undisputed facts establish that orders were placed by Rural King and Atwoods and accepted by Defendant within 100 days of the Plan's expiration as well as within 100 days of Plaintiff's termination. It is undisputed that the Plan provided, in the event an employee was

terminated prior to the completion of a sale for which he is responsible, that the employee would receive a portion of the commission due if payment is received by Defendant within 100 days of the employee's termination. It is undisputed that during the term of the Plan Plaintiff solicited business from Atwoods and Rural King. As stated above, the Plan is ambiguous as to its definition of uncompleted transactions pending. The Plan is also ambiguous as to the extent to which an employee should be compensated for a sale which was uncomplete at the time the Plan expired but which was completed thereafter. Under Missouri law, if an ambiguity exists in a contract, it must be construed against its scrivener, which in this case is Defendant. See Prentice v. Rowe, 324 S.W.2d 457, 464 (Mo. Ct. App.1959); Leathers v. Metal Craft Mfg. Sales Corp., 240 S.W.2d 211 (Mo. Ct. App.1951). To the extent the ambiguities in the Plan are construed against Defendant, Plaintiff may be entitled to commissions for the portion of sales to Rural King and Atwoods which are attributable to his efforts during the term of the Plan. The court further finds that the ambiguities in the Plan create genuine issues of material fact, including, but not limited to, whether the work Plaintiff performed during the term of the contract amounted to uncompleted transactions and the extent to which Plaintiff's efforts during the term of the Plan were responsible for the orders placed by Rural King and Atwoods in December 2008. The court finds, therefore, that summary judgment should be denied, in regard to Count I of the Amended Complaint alleging that Plaintiff is entitled to be compensated for sales to Rural King and Atwoods based on a contract.

**B.    Count II - Duty of Good Faith and Fair Dealing:**

In Count II of the Amended Complaint, Plaintiff alleges that the Plan implied a duty of good faith and fair dealing and that, by failing and refusing to pay Plaintiff commissions on sales to Rural King and Atwoods, Defendant violated this duty. Missouri law implies a covenant of good faith and

9

fair dealing in contracts. See Bishop v. Shelter Ins. Co., 129 S.W.3d 500, 505 (Mo. Ct. App. 2004); Farmers' Elec. Coop., Inc. v. Missouri Dept. of Corr., 977 S.W.2d 266, 271 (Mo. 1998). "There is no breach of the implied covenant of good faith and fair dealing where the contract expressly permits the actions being challenged." Al-Khaldiya Elec. and Elec. Equip. v. Boeing Co., 571 F.3d 754, 758-59 (8th Cir. 2009) (citing Bishop 129 S.W.3d at 505).

Clearly, Defendant had a duty of good faith and fair dealing towards Plaintiff during the term of the Plan. The court has held that there is a genuine issue of material fact as to whether Plaintiff is entitled to commissions for uncompleted transactions pending at the time the Plan expired. Additionally, the court has found that there are genuine issues of material fact as to whether the work Plaintiff performed during the term of the contract amounted to uncompleted transactions and the extent to which Plaintiff's efforts during the term of the Plan were responsible for the orders placed by Rural King and Atwoods in December 2008. The court finds, therefore, that summary judgment should be denied in regard to Count II. [5]

## C. Count III - Missouri Sales Commission Statute:

In Count III Plaintiff alleges that he is entitled to commissions for sales to Rural King and

---

[5] Defendant contends that because Plaintiff was an at-will employee, there can be no duty of good faith and fair dealing. Indeed, Plaintiff was an at-will employee. Cases which provide that there is no duty of good faith and fair dealing in regard to an at-will employee address the termination of an at-will employee or address issues which are not controlled by a contract. See e.g., Newco Atlas, Inc. v. Park Range Const. Inc., 271 S.W.3d 886, 893 (Mo. Ct. App. 2008) ("Missouri does not imply a covenant of good faith and fair dealing in at-will distributorship agreements."); Kelly v. State Farm Mut. Auto. Ins. Co., 218 S.W.3d 517, 524 (Mo. Ct. App. 2007) ("[T]here can be no claim for the breach of an implied covenant of good faith and fair dealing in the termination of an at-will employment relationship."); Bishop, 129 S.W.3d at 506 ("[T]he Missouri employment at-will doctrine expressly prohibits any consideration of the implied covenant of good faith and fair dealing."). Plaintiff's termination is not at issue in the matter under consideration and, as discussed above, the issue is whether Plaintiff is entitled to commissions for transactions which were uncompleted at the time the Plan expired.

10

Atwoods pursuant to the Missouri Sales Commission Statute, Mo. Rev. Stat. § 404.911 et. seq. The Missouri Sales Commission Statute, § 407.912.1(1), provides that, to the extent there is an applicable contract, the terms of the contract determine when sales commissions are due. Additionally, Mo. Rev. Stat. § 407.913 provides for civil actions where a principal fails to pay a sales representative commissions. Because the court has found that, to the extent the Plan is ambiguous in regard to uncompleted transactions pending, Plaintiff may be entitled to commissions for sales to Rural King and Atwoods. As such, the court finds, that the Plan controls and that, therefore, summary judgment should be granted in Defendant's favor as to Count III.

Additionally, assuming, arguendo, that the Plan did not control, the Missouri Sales Commission Statute provides that a terminated employee is entitled to commissions on sales where products or services were ordered prior to the employee's termination. In Plaintiff's case, the undisputed facts establish that no products or services were ordered by Atwoods or Rural King prior to Plaintiff's termination. As such, the court finds, alternatively, that the undisputed facts establish that Plaintiff is not entitled to commissions under the Missouri Sales Commission Statute, and that summary judgment should be granted in Defendant's favor in regard to Count III.

## MOTION FOR PROTECTIVE ORDER

Defendant seeks a protective order for any document produced which contains confidential or proprietary business information which may give a competitive advantage to an opposing party or competitor and for any document which contains compensation information about persons not a party to this lawsuit. Defendant seeks the protective order "for attorney's eyes only." Defendant also asks the court to stay discovery pending the resolution of the Motion for Summary Judgment. Plaintiff opposes the imposition of a protective order only to the extent that it is on an "attorney's eyes only"

11

basis.

Fed. R. Civ. P. 26(c) provides that upon granting a protective order a court may impose terms and conditions "as are just." Thus, upon issuing a protective order a court should assure that it safeguards the rights of the parties. See In re Remington Arms Co., 952 F.2d 1029, 1032 (8th Cir. 1991).

In certain matters, such as patent cases, issuing a protective order for attorneys' eyes only is necessary to facilitate the purpose of the protective order. The court finds, however, in the matter under consideration that Plaintiff's inability to review documents which are the subject of Defendant's requested protective order would hamper or inhibit the ability of Plaintiff and his attorneys to present Plaintiff's case. Plaintiff, as well as his attorneys, may need to examine documents produced by Defendant which relate to trade secrets or confidential business information. The court will, therefore, grant Defendant's Motion for Protective Order with a proviso that documents which may give a competitive advantage to an opposing party or competitor, trade secrets, confidential business information, and compensation and other information regarding persons not a party to this lawsuit be produced for attorneys' *and Plaintiff's* eyes only. **The parties are reminded that violation of the protective order may result in sanctions and penalties.**

## MOTION TO COMPEL

Plaintiff seeks to compel Defendant to respond to interrogatories and requests for production. For example, Defendant has refused to respond to Plaintiff's request for the names and positions of persons who have knowledge or information regarding the allegations of Plaintiff's Amended Complaint and "the relevant facts of which such person has knowledge or information." Defendant has also refused to identify and describe reasons for the separation from employment of salespersons

other than Plaintiff since January 1, 2007. Further, for example, Defendant has refused to provide Plaintiff with records of salespersons employed by Defendant since January 1, 2007, and records of performance improvement plans issued to salespersons employed by Defendant since January 1, 2007.

Defendant contended, in response to Plaintiff's requests, that Plaintiff is not entitled to recover sales commissions as alleged in the Amended Complaint; that the information which Plaintiff seeks in his Interrogatories and Requests for Discovery are outside the "narrow issue" of "whether the sales in question were consummated during the effective dates of the Plan"; and that the information which Plaintiff seeks is unduly burdensome until the court rules on Defendant's Motion for Summary Judgment. Defendant also contends, before the court, it does not need to respond to Plaintiff's discovery requests because it is entitled to summary judgment, because Plaintiff's discovery requests are beyond the scope of dispositive issues, because it is entitled to a protective order regarding the information which Plaintiff seeks, and because Plaintiff's discovery requests are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

The court has found above that there are genuine issues of material fact relevant to whether Plaintiff can recover based on Counts I and II of the Amended Complaint. As stated above, extrinsic evidence is admissible to facilitate interpretation of an ambiguous contract, such as the Plan in the matter under consideration. See <u>Yerington</u>, 124 S.W.3d at 522. Additionally, the court has granted Defendant's request for a protective order, with the proviso that it be for attorneys' and Plaintiff's eyes only. The court has stressed the necessity of compliance with the protective order. The court finds that the information which Plaintiff seeks, and which Defendant has refused to provide, is relevant resolving genuine issues of material fact. The court finds, therefore, that Plaintiff's Motion to Compel should be granted.

## CONCLUSION

For the reasons stated more fully above, the court finds that Defendant's Motion for Summary Judgment should be denied, in regard to Counts I and II of the Amended Complaint, and granted, in regard to Count III of the Amended Complaint; that Defendant's Motion to Strike should be denied; that Defendant's Motion for Protective Order and Stay should be granted, in part, and denied, in part; and that Plaintiff's Motion to Compel should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, in part, and **DENIED**, in part; Doc. 22

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** in regard to Counts I and II of the Amended Complaint;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in regard to Count III of the Amended Complaint;

**IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order and to Stay Discovery is **GRANTED**, in part, and **DENIED**, in part; Doc. 31

**IT IS FURTHER ORDERED** that a Protective Order shall be imposed for attorneys' and Plaintiff's eyes only for documents which may give a competitive advantage to an opposing party or competitor, trade secrets, confidential business information, and compensation and other information regarding persons not a party to this lawsuit;

**IT IS FURTHER ORDERED** that, to the extent Defendant asks to stay discovery, the Motion for Protective Order and Stay is **DENIED**, as moot;

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike is **DENIED**; Doc. 30

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 17th day of November, 2009.